IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA                    No. 2:14cr121–JFC–012

v.

TYRONE TURNER,

                     Defendant

### *DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD DEPARTURE FROM THE SENTENCING GUIDELINES*

Sentencing is set for August 26, 2016 following a change of plea from which Mr. Turner bore responsibility for participation in a drug conspiracy. We noted no corrections or additions to the pre–sentence investigation report.

By this memorandum, we enlighten this Honorable Court as to the applicability of the sentencing factors to Mr. Turner and specifically request that the court limit sentence him to a term of probation with a concomitant period of home detention as being sufficient but not greater than necessary to comply with the goals of punishment.

## The Current State of Sentencing Law

Before the United States Supreme Court decided United States v. Booker, 543 U.S. 220 (2005), district courts could depart from a Guidelines range only when "encouraged" bases for departure were present, ala in the Guidelines, or in other "exceptional" situations. United States v. Koon, 518 U.S. 81, 95 (1996) (quoting 1995 USSG ch. 5, pt. H, intro. comment). A defense request for departure in the district court would, for

example, occur with the hope that a below-Guidelines sentence be imposed. See, e.g., United States v. McBroom, 124 F.3d 533, 539 (3rd Cir. 1997) (discussing the effect of diminished capacity in light of discouraged and encouraged factors when the Guidelines were mandatory).

In Booker, the United States Supreme Court announced that the Guidelines are advisory only. Booker, 543 U.S. at 246. Consistent with that approach, the following three-step process gives the Guidelines appropriate consideration in the sentencing process:

1. Calculate the Guidelines sentence precisely as would have been true before Booker, United States v. Wright, 642 F.3d 148, 152 (3rd Cir. 2011), citing United States v. Tomko, 562 F.3d 558, 567 (3rd Cir. 2009);

2. In that exercise, the court must formally rule upon a party's motion and state on the record whether a departure will be granted and, if so, how the departure affects the Guideline calculation (taking into account the Third Circuit's pre-Booker case law, which has only advisory force), Tomko, 562 F.3d at 567; and United States v. Vazquez-Lebron, 582 F.3d 443, 445-46 (3rd Cir. 2009).

3. The trial court must exercise discretion in considering the relevant Section 3553(a) factors in setting the sentence, regardless of whether it varies from the Guidelines sentence. Id.

United States v. Gall, 128 S. Ct. 586, 596 (2007) confirmed the first and third steps of this calculus and clarified the fact that a district court must consider all of the Section 3553(a) factors. The need to rule on departure motions, however, is in no way diminished. See United States v. Wise, 515 F.3d 207, 216 (3rd Cir. 2008). Modifying the Guidelines range under step two is a "departure" and is based upon reasons provided by the Guidelines. United States v. Floyd, 499 F.3d 308, 311 (3rd Cir. 2007); United States v. Jackson, 467 F.3d 834, 837 n.2 (3rd Cir. 2006). A sentence that diverges from the final Guidelines range – which, because of a departure at step two, may be different from the original Guidelines range – is a "variance." Floyd, 499 F.3d at 311. A variance is based upon the court's consideration of the Section 3553(a) factors. United States v. Gunter, 462 F.3d 237, 247 n.10 (3rd Cir. 2007) (citation omitted).

Even though the Guidelines must be considered, a district court's calculation of the sentence by that method does not a presumptively reasonable sentence make. In Nelson v. United States, 555 U.S. 350, 352 (2009) the Court took pains to rule that a Guidelines sentence is not presumed reasonable and to find as such constitutes error. (The Fourth Circuit improperly affirmed a within-Guidelines sentence despite the trial judge's remarks that, "the Guidelines are considered presumptively reasonable.") A Guidelines sentence is no longer presumed to be reasonable. See also Spears v. United States, 555 U.S. 261, 266 (2009) (a district judge can reject and vary categorically from a Guideline provision, in this case involving crack-cocaine ratio, in light of policy disagreement with those Guidelines). See also United States v. Cavera, 550 F.3d 180, 191 (2nd Cir. 2008) (*en*

*banc*) ("As the Supreme Court strongly suggested in <u>Kimbrough</u>, a district court may vary from the Guidelines range based solely [up]on a policy disagreement with the Guidelines, even where that disagreement applies to a wide class of offenders or offense.")

We now see that the United States Constitution requires a case-specific, informed and nuanced analysis consistent with the requirements of Section 3553(a). The United States Supreme Court made this point clear in <u>Pepper v. United States</u>, 131 S. Ct. 1229 (2011):

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. Koon v. United States, 518 U.S. 81 (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." (citations omitted)
>
> Consistent with this principle, we have observed that "both before and since the American colonies became a nation, courts in this county and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." Williams, 337 U.S. at 246. In particular, we have emphasized that "[h]ighly relevant -- if not essential -- to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." 337 U.S. at 247. Permitting sentencing courts to consider the widest possible breadth of information about a defendant "ensures that the punishment will

> suit not merely the offense but the individual defendant." Wasman v. United States, 468 U.S. 559, 564 (1984).

Id. at 1240

<u>Pepper</u> instructs that when fashioning a sentence, the district court may consider any information concerning the background, character and conduct of the defendant, unless that process somehow violates law. Id., citing to, among others, 18 USC §§ 3551, 3661.

## The Section 3553(a) Sentencing Factors

*The Nature and Circumstances of the Offense and Defendant's Characteristics*

Dealing in the commerce known as cocaine sales violates federal law and is obviously serious. Mr. Turner's conduct, under the count to which he pleaded guilty, concerns activity that involved approximately 4.25 ounces of powder cocaine. Further, that he collected money for Raymond Turner, a cousin. The applicable period of indictable conduct is 11 months starting in June 2013.

Mr. Turner's conduct did not involve the threat or use of violence, a minor, property damage or actual use of weapons or explosive devices. He does not face a mandatory–minimum sentence. In these specific respects, the felony–grade offense on which he has been convicted is less serious than other felony–grade offenses where one or more of these factors may appear.

He did not occupy any kind of managerial or other oversight role. He did not recruit or assist in recruiting prospects to join him or others in these endeavors. During

the course of this investigation, Mr. Turner was gainfully employed at a local university before FBI investigators notified school administrators of his supposed involvement that in turn led to his dismissal. In any event, there is no credible evidence showing that Mr. Turner participated in this conspiracy while on or near that university campus.

Although not married and never having fathered any children, Mr. Turner has thrived in a long–term relationship with a woman named Jacqueline L. Gray, who has four daughters. See Exhibit F. By both her admission and that of three of the four girls, it is stunning to learn how integral Mr. Turner has been to their respective lives. See Exhibits A–C, F, and H. Aleah Mallory, Alwana Mallory and Rayla Mallory have all provided this court with their distinct impressions of how this man has owned up to domestic responsibilities even though they have no biological connection to him. The Mallory girls in particular noted how their actual father has become absent from their lives and Mr. Turner has not only filled the void but also done so in ways that arguably redefine stability. See Exhibits A, C.

Indeed, their views, either separately or collectively, tend to show how Mr. Turner downplayed the characterization of his roles when telling the probation officer that his relationship with either Ms. Gray or her daughters is simply "pretty good." See paragraph 38, PSIR. If anything, those comments are modest by comparison, particularly when juxtaposed with the fact that Mr. Turner did not have a father model during the younger, more impressionable years of his life and knew not from an adult male provider. His upbringing came from his mother, Mary Turner, and yet he has become a positive force,

albeit in the role of a "stepfather," in the lives of these youngsters.

In addition to serving as if he were the actual father to these girls, Mr. Turner has taken up the cudgels for his 84–year old maternal grandmother. See Exhibits D, J, and K. By these testimonials, Mary Turner, her sister Patricia Thompson, and family friend Geanine Harris have noted a strong work ethic in Mr. Turner's helping to care for Mary Turner's and Patricia Thompson's mother.

Lastly, but not in the least, yet other individuals have provided insight into a reputation on Mr. Turner's part that seems entirely at odds with one who stands accused of, and later admits to, criminality. See Exhibits E, G, I, and K.

These are strong attributes of a kind that denote positive influence, if only because they define a person who is unlike many others coming before this Honorable Court under similar circumstances. He re–gained and continues to maintain full–time employment, trying to be a productive member of society. He's not abusing controlled substances. He has no rap sheet. He does not father children out of wedlock. In co–habiting with another individual, he not only does so with the understanding that she brings children from a different relationship into the home, but also provides for them in tangible and intangible ways as if he had a true familial connection to each of those children by Ms. Gray. Just as importantly, his long–standing connection with Ms. Gray arguably shows a commitment to a relationship that is emblematic of stability and responsibility.

*The Need for the Sentence Imposed: To Protect the Public From Further*

*Crimes of the Defendant*

No mandatory–minimum term of confinement is part of this equation. Under the facts of this case, it's not clear how imprisoning Mr. Turner for any prolonged period of time furthers the goal of protecting the public from the possibility of further misdeeds. Indeed, a request for a downward departure from the advisory guidelines to a term of probation forms a later portion of this memorandum.

*The Need for the Sentence to be Imposed: To Provide the Defendant*

*with Needed Educational or Vocational Training, Medical Care, or*

*Other Correctional Treatment in the Most Effective Manner*

It does not appear that Mr. Turner has a substance–abuse problem. He has educational and vocational strengths, perhaps putting aside the need for additional training. His physical and mental health are such that additional medical care appears presently unnecessary. Earlier orthopaedic surgery, during pre–trial release, on a lower extremity appears to have healed without complication.

*The Kinds of Sentences Available*

Mr. Turner is not subject to a mandatory–minimum sentence. He has changed his plea to an offense found at 21 USC § 841(b)(1)(C), whose statutory maximum is 20 years. Such an offense is a Class C felony.

As it stands, the PSIR in this matter shows that Mr. Turner's case falls within offense–gravity score 15, which produces a confinement range of 18–24 months under

Criminal History Category I. Under the guideline–range sentencing table, this score is but two realms beyond Zone C, or in Zone D where probation is supposedly disallowed.

However, under 18 USC § 3561, probation is allowed in circumstances where the defendant has been convicted of a Zone C felony offense. Here, the authorized term is at least one, but not more than, five years. A sentence of probation, when imposed, must be accompanied by a fine or community confinement such as home detention in this case.

A fine is possible but unlikely as Mr. Turner arguably does not have sufficient means. His ability to meet the obligation imposed by a fine is circumspect.

Restitution is not an issue. The special assessment is $ 100.

*The Need to Avoid Unwarranted Sentence Disparities*

There are 14 co–defendants in this case. This matter, like many of its kind, arose in conjunction with a Title III investigation that originated in McKeesport, Pennsylvania and whose targets were at least three men who are not part of this docket. Later targets of that operation, through what is commonly known as spin–off wiretaps, turned out to be the telephone facilities of co–defendants Raymond Turner and Antione Arnett.

Of the 14 co–defendants, 13 will have been sentenced by August 26, 2016. Only Alfonso Eggleston's case is pending in the pre–trial phase as Ronell Morrison tentatively awaits sentencing August 19, 2016. Save for Tyrone Turner, all of the others have received judgement of sentence. A chart shown below provides a snapshot of those outcomes. All defendants were found guilty by plea changes to a drug–conspiracy count involving powder cocaine. Except for Messrs. Arnett and Underwood, all pleas concerned amounts below 500 grams, although Stanley Moore, Eugene Michelotti and Robert Hueckeroth were responsible for a subset of under 50

grams apiece. Interestingly, Moore, Michelotti and Hueckeroth all possessed rap sheets, providing for respective criminal–history scoring of categories II – IV on the guidelines chart.

| Defendant | Responsible Weight | Disposition |
|---|---|---|
| Antione Arnett | > 500 g., < 2 kg. | 60 months imprisonment |
| Timothy Underwood | > 500 g., < 2 kg. | 60 months imprisonment |
| Alfonso Eggleston | n/a | n/a |
| Burden Fincher | 200 – 300 g. | 4 years probation w/6 months home detention |
| Charles Jennings | 100 – 200 g. | 4 years probation w/6 months home detention |
| Matthew King | unknown | 3 years probation w/6 months home detention |
| Henry Bennett | unknown | 4 years probation |
| Stanley Moore | < 50 g. | time served |
| David Bilicic | 100 – 200 g. | 12 months and 1 day |
| Ronell Morrison | 100 – 200 g. | pending August 19, 2016 |
| Raymond Turner | 400 – 500 g. | 44 months imprisonment[1] |
| Eugene Michelotti | < 50 g. | 5 months community–corrections confinement |
| Robert Hueckeroth | < 50 g. | 4 years probation w/8 months home detention |
| Tyrone Turner | 100 – 200 g. | pending August 26, 2016 |

The largest confinement terms in this matter were likely the result of mandatory–minimum sentencing (*e.g.*, Arnett and Underwood), which effectively means that the United States Congress, by legislative fiat, provided the statutory punishment that this Honorable Court was required to impose. The other sentences imposed in this matter did not seem to implicate

---

[1] Raymond Turner also entered a plea to being a felon–in–possession and was sentenced to a 44–month term that ran concurrently with the drug–conspiracy count.

that statutory scheme. The lone individual with the highest responsible weight who did not face a mandatory–minimum sentence was Raymond Turner, who is a cousin of Tyrone Turner. A portion of that 44–month term may have been driven by Raymond Turner having a Criminal History Category of IV.[2]

As noted before, the individuals responsible for the lowest weights had each carried rap sheets. The only other notable individual in this regard was David Bilicic, who presented with 33 separate convictions[3] at the time of federal sentencing and received relatively nominal punishment by comparison.

Tyrone Turner has taken responsibility for a drug quantity of 100 – 200 grams. He has no rap sheet, although we recognize that a case is pending against him in Allegheny County that could result in a DUI conviction. The preliminary hearing in that matter was to have occurred August 18, 2016. Mr. Turner was also accused, in count 3 of the indictment, of using a firearm in furtherance of a drug–trafficking offense. Even though he acknowledges responsibility for that conduct, it has been further accounted for through a two–level bump under Section 2D1.1(b)(1) of the sentencing guidelines for possessing a firearm arguably in connection with participation in the drug conspiracy.

> *The Kinds of Sentence and the Sentencing Range Established For . . . . the Applicable Category of Offense Committed by the Applicable Category of Defendant as Set Forth in the Guidelines*

Any arguments or positions that could be raised here have already been discussed.

---

[2] See Document no. 561.

[3] See Document no. 436.

### Request for a Downward Departure from Advisory Guideline Range

At Level 15, Mr. Turner is but two realms removed from the Zone C in which the advisory guidelines allow for probation. Furthermore, his having pleaded guilty to a Zone C felony offense makes him nonetheless statutorily eligible for probation under 18 USC § 3561. With no prior involvement in any criminal–justice system, Mr. Turner bears the scarlet letter of having his first run–in via a federal indictment. For the vast majority of individuals appearing before this Honorable Court in any criminal court, the opposite is true. In those instances, those defendants have had numerous scrapes in other jurisdictions before landing on the doorstep of a federal courthouse. Not Mr. Turner. He'll be 34 in two short months and has led a law–abiding life until the juncture that forms his alleged participation in this conspiracy.

In imposing a probationary term, this Honorable Court is subjecting the defendant to a criminal sentence. Further, it can be stringent enough to meet the objectives of Section 3553(a). In recent times, the United States Supreme Court has held that,

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled. Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted

of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual 'special conditions' imposed by the court.

United States v. Gall, 552 U.S. 38, 48 (2007).

We direct this Honorable Court to the material filed by fellow defense lawyer R. Damien Schorr on behalf of Mr. Bilicic. See Document no. 436 at Exhibit A. Several years ago Matthew G. Rowland, as assistant director for the office of probation and pre–trial services penned an article that is entitled, "Too Many Going Back, Not Enough Getting Out ? Supervision Violators, Probation Supervision, and Overcrowding in the Federal Bureau of Prisons. Mr. Rowland makes the point, among others, that probation can be a more primary sentencing option than imprisonment. Incarceration is undoubtedly more punitive than probation but is it the proper remedy for every offender who is looking at time behind bars of some duration ?

Mr. Turner does not present as an individual whose idle mind resembles the devil's workshop. Rather, he toils in a full–time position, earning a wage that in large part provides for the well–being of others, including several minors, and not just himself. And yet he also provides for others in ways that more intangible than mere receipt of a paycheck. Those children of Ms. Gray have specifically expressed their reliance upon him, emotionally and otherwise, making him a dependable figure in their respective lives.

On top of that and in ways no less important, he is not tortured by a corrosive drug habit. He shows no violent propensities or traits. He is one for whom some decision–making was undeniably regrettable yet hardly the kind that should subject him to a prison term.

## Imposing the Judgement of Sentence

Tyrone Turner has been on unsecured bond and pre–trial release continuously since May 9, 2014. Absent the citation for alleged commission of DUI in May 2016, he has not violated conditions of his release in the interim. Further, he has sought and received authorization on three occasions to travel out–of–state and has done so without any consequence. His record is devoid of being a danger to the community; equally important, he is not a flight risk. In these interests, and only if an incarceration term is ordered, then we respectfully request that he be permitted to self–report to the facility at which it would be served.

Respectfully submitted,

S / *Mark A. Sindler*
MARK A. SINDLER, ESQUIRE
*Pa. I.D. No. 53476*
310 Grant Street, Suite 2330
Pittsburgh, Pennsylvania  15219–2264
412.471.6680
Counsel for Tyrone Turner